**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE EAMON FOUNDATION,<br><br>                Plaintiff,<br><br>    v.<br><br>TIME IN, LLC d/b/a TIME IN APPAREL and CHARLES A. GOLDBERG,<br><br>                Defendants. | No.   2:20-cv-1250<br><br>**JURY TRIAL DEMANDED**<br><br>**ELECTRONICALLY FILED** |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiff The Eamon Foundation (hereinafter "Eamon"), a Pennsylvania non-profit charitable corporation, for its Complaint for Injunctive and Declaratory Relief against Time In, LLC d/b/a Time In Apparel ("Time In") and Charles A. Goldberg ("Goldberg") (collectively "Defendants"), states as follows:

**PRELIMINARY STATEMENT**

1. This civil action is brought by Eamon against the Defendants for injunctive relief, declaratory relief, as well as trebled damages and attorneys' fees/costs arising out of Defendants' flagrant infringement of Eamon's "The Terrible Towel®" trademarks under the Lanham Act, Defendants' unfair competition under the Lanham Act and state law, Defendant's dilution of Eamon's "The Terrible Towel®" trademarks under the Lanham Act and state law, and Defendants' unjust enrichment as a result of the tortious conduct set forth below.

**PARTIES**

2. Plaintiff Eamon is a Pennsylvania non-profit charitable corporation having its principal place of business at 1000 Gamma Drive, Suite 106, Pittsburgh, Pennsylvania 15238.

3. Defendant Time In is a limited liability company organized and existing under the laws of the State of Florida, and having a principal place of business at 1200 School Street, Indiana, Pennsylvania 15701 and/or 12 Inlet Cay Drive, Ocean Ridge, Florida 33435.

4.      Defendant Goldberg is an individual who is believed to reside at 803 Glenn Street, Canonsburg, Pennsylvania 15317-1917.  Based upon reasonable information and belief, Goldberg also owns, operates and/or otherwise controls Time In as member and/or manager thereof.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over the subject matter of this action pursuant 28 U.S.C. § 1331 and § 1338(a).

6.      Venue over this action is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.  One or both of the Defendants, have, among other things, solicited and made sales of products which infringe upon Eamon's "The Terrible Towel®" trademark(s) in this judicial district and caused to be sent into this judicial district such infringing products.  One or both of the Defendants also maintain a website -- https://www.timeinapparel.com/ -- which is accessible by residents of this judicial district and upon which a user may access and purchase products which infringe upon Eamon's "The Terrible Towel®" trademark(s).

## BACKGROUND

7.      Beloved sports broadcaster Myron Cope, who passed away in February 2008 after many decades serving as the incomparable radio and/or television voice of the National Football League franchise known as the Pittsburgh Steelers (the "Steelers"), created, promoted, and has long been associated with the phrase, term, and concept "The Terrible Towel."

8.      The phrase, term and concept "The Terrible Towel" has also long been associated in the United States and around the world with the Steelers and their devoted fans.

9.      Mr. Cope was formerly the owner of the trademark/service marks (a) "The Terrible Towel®"; (b) "Myron Cope's Official The Terrible Towel®"; and (c) marks in the related family of marks which begin with the words "The Terrible" or "Terrible" and are

2

followed by a descriptive term identifying the type of product on which the mark is used (collectively hereinafter the "Terrible Marks").

10. Depictions of various, but not all, products currently utilizing the Terrible Marks and being sold to the general public are attached hereto as **Exhibit 1** and incorporated herein by reference.

11. In or about August of 1996, Mr. Cope graciously gifted and assigned all of his right, title, interest, and goodwill in and to the Terrible Marks to the Allegheny Valley School ("AVS").

12. AVS is a non-profit charitable corporation which offers residence, residential care, and habitative services to intellectually and developmentally disabled persons.

13. In or about May 2008, AVS gifted and assigned all of its right, title, interest, and goodwill in and to the Terrible Marks to the AVS Foundation.  A true and correct copy of the document(s) evidencing this assignment is/are attached hereto as **Exhibit 2** and incorporated herein by reference.

14. In or about December 2016, AVS Foundation changed its name to The Eamon Foundation (hereinabove and below, "Eamon").  A true and correct copy of the document(s) evidencing this name change is/are attached hereto as **Exhibit 3** and incorporated herein by reference.

15. As a result of the name change, Eamon became the owner of the right, title, interest and goodwill in and to the Terrible Marks.

16. Eamon has continued to carry out AVS Foundation's legacy, status and mission as a non-profit charitable corporation dedicated to, among other things, providing economic and/or other support to AVS.

17. Eamon is the current owner of record of at least the following federal registrations at the U.S. Trademark Office (collectively the "Federal Terrible Marks"):

    a. U.S. Federal Trademark Registration No. 2,128,165 for the mark "**THE TERRIBLE TOWEL**".

    b. U.S. Federal Trademark Registration No. 5,238,295 for the mark "**THE TERRIBLE TOWEL**".

    c. U.S. Federal Trademark Registration No. 3,313,901 for the mark "**MYRON COPE'S OFFICIAL THE TERRIBLE TOWEL**".

    d. U.S. Federal Trademark Registration No. 2,123,428 for the mark "**MYRON COPE'S OFFICIAL THE TERRIBLE TOWEL and Design**".

    e. U.S. Federal Trademark Registration No. 3,267,087 for the mark "**MYRON COPE'S OFFICIAL THE TERRIBLE TODDLER TOWEL**".

    f. U.S. Federal Trademark Registration No. 2,386,205 for the mark "**MYRON COPE'S OFFICIAL THE TERRIBLE TODDLER TOWEL**".

    g. U.S. Federal Trademark Registration No. 4,484,929 for the mark "**THE TERRIBLE TOWEL**".

    h. U.S. Federal Trademark Registration No. 4,606,868 for the mark "**THE TERRIBLE SCARF**".

True and correct copies of the Certificates of Registration for the Federal Terrible Marks are attached hereto as **Exhibits 4** through **11** and incorporated herein by reference.

18. Eamon is also the owner of Pennsylvania State Trademark Registration No. 3,338,786 for the mark "**THE TERRIBLE**" (the "Pennsylvania Terrible Mark"). A true and correct copy of the registration of the Pennsylvania Terrible Mark is attached hereto as **Exhibit 12**.

19. In addition, Eamon is the owner of the common law trademark "A Pittsburgh Original" (hereinafter the "Common Law Terrible Mark"). The Federal Terrible Marks, the

Pennsylvania Terrible Mark, and the Common Law Terrible Mark are collectively referred to hereinabove and below as the "Terrible Marks".

20. The Steelers are Eamon's exclusive licensee relative to, *inter alia*, the marketing, production and sales of products bearing the Terrible Marks.

21. The Steelers, on rare occasions and with Eamon's full knowledge and consent, sub-license the use of the Terrible Marks to third party product manufacturers.

22. The Defendants are not now, and never have been, authorized licensees or sub-licensees relative to the marketing, production and sales of products bearing the Terrible Marks.

23. Due to more than 40 years of continuous use in connection with the Steelers, their visibility to fans viewing Steelers games in person or on television in Pittsburgh and/or other cities across the world, media articles about "The Terrible Towel®," the distribution of "Terrible Towels" and other products bearing the Terrible Marks through numerous channels of commerce, and the stature of Mr. Cope, the Terrible Marks have become widely recognized by the general consuming public of the United States, and around the world, as a designation of source of goods, thus earning the status of famous marks as set forth in 15 U.S.C. § 1125(c)(2).

24. The Terrible Marks have acquired distinctiveness in that the general consuming public associates goods manufactured, sold, and distributed with the Terrible Marks as originating from a single source.

25. AVS, through Eamon and/or the Steelers, receives a portion of the proceeds generated from the sale of all products bearing the Terrible Marks.

26. Said proceeds, in turn, serve to benefit AVS as well as the intellectually and developmentally disabled persons that AVS serves.

**DEFENDANTS INFRINGE UPON AND DILUTE THE**
**TERRIBLE MARKS AND UNFAIRLY COMPETE WITH EAMON**

27. By no later than the first week of July 2020, Defendant Goldberg, by and through Defendant Time In, began to market and sell a product known as "The Terrible Mask" and related products such as gaiters (collectively, the "Infringing Products") in an obvious attempt to profit from the COVID-19 pandemic through the unlawful use of the Terrible Marks.

28. Depictions of the Infringing Products, as found on Time In's website at https://www.timeinapparel.com/ as of July 8, 2020 (the "Infringing Website"), are attached hereto as **Exhibit 13** and incorporated herein by reference.

29. The Infringing Products prominently display the Terrible Marks, in fact using the exact same stylistic lettering, and are obviously intended to trade off the popularity and goodwill associated with them.

30. Defendants have been and are continuing to advertise, market, and sell the Infringing Products in interstate commerce vis-à-vis the Infringing Website and/or otherwise.

31. The Infringing Products and the Infringing Website bear the mark "TM," improperly suggesting that they are authorized users of the Terrible Marks and are related to and/or sanctioned by Eamon and/or the Steelers.

32. In addition to the Internet, Defendants sold and/or caused to be sold the Infringing Products to at least one grocery store in the Pittsburgh region, and perhaps other commercial stores in or around the Pittsburgh region and elsewhere.

**DEFENDANTS REFUSE TO ABATE THEIR UNLAWFUL CONDUCT**

33. On or about July 13, 2020, Eamon's counsel sent a letter to Time In demanding that it, *inter alia*, cease the production, promotion, marketing and/or sale of the Infringing Products on the Infringing Website and elsewhere as well as recall all Infringing Products from

stores to which they have been sold, including, but not limited to, a grocery store located in Whitehall, Pennsylvania (the "July 13th Cease and Desist Letter").

34. At the time of drafting and sending the July 13th Cease and Desist Letter, Eamon's counsel had no reason to know or believe that Goldberg was associated in any fashion with Time In and/or the Infringing Products.

35. By way of a response letter dated July 18, 2020 from Attorney Lee Goldberg, Defendants' alleged counsel and presumed relative of Defendant Goldberg, informed Eamon that Goldberg is a "member" of Time In (the "July 18th Response Letter").

36. In the July 18th Response Letter, the Defendants also refused Eamon's demand to abate their illegal production, promotion, marketing and/or sale of the Infringing Products.

37. Instead, amongst other ridiculous allegations, Defendants' counsel stated that Mr. Cope and Goldberg entered into a written "non-interference" agreement in 1978 whereby "Goldberg would not challenge the rights of Cope to make and sell 'the terrible towel' [sic]" and "[Mr. Cope] agreed that Goldberg had the right to make and sell any other goods and products bearing the word 'terrible.'"

38. The July 18th Response Letter did not enclose any such written agreement between Goldberg and Mr. Cope regarding the Terrible Marks.

39. In fact, the Defendants admit in the July 18th Response Letter that they cannot locate an original or copy of this alleged written agreement between Goldberg and Mr. Cope.

40. Nor is Eamon in possession of an original or copy of this alleged written agreement between Goldberg and Mr. Cope.

41. This is because no such written (or oral) agreement ever existed.

42. Defendants' counsel also suggested in the July 18th Response Letter that trademark applications for the Terrible Marks were pursued in "bad faith" and questioned whether Mr. Cope (and thus Eamon) had legal rights to the Terrible Marks in the first place.

7

43. Defendants have no right, license, authority, permission, and/or any other interest which allows them to utilize the Terrible Marks.

44. If Defendants are permitted to continue to infringe upon the Terrible Marks, this will establish a precedent and potentially encourage other persons or entities to engage in the same illegal conduct, thereby causing an irreparable loss of customer goodwill associated with the Terrible Marks.

## COUNT I

### TRADEMARK AND SERVICE MARK INFRINGEMENT
### UNDER SECTION 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

45. Eamon incorporates each of foregoing Paragraphs as if each was set forth herein.

46. Defendants have been and are currently using the Terrible Marks despite not being authorized to do so.

47. Defendants' conduct willfully and flagrantly violates the Lanham Act.

48. Defendants' use of the Terrible Marks in connection with the production, promotion, marketing and/or sale of the Infringing Products is to cause confusion or mistake amongst consumers and/or to deceive consumers in violation of the Lanham Act.

49. Eamon has been damaged by Defendants' production, promotion, marketing and/or sale of the Infringing Products.

## COUNT II

### UNFAIR COMPETITION UNDER
### SECTION 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

50. Eamon incorporates each of the foregoing Paragraphs as if each was set forth herein.

51. Defendants are in the business of selling, *inter alia*, face masks, gaiters and/or other such products and related accessories.

52. The products sold or offered to the public by Defendants have been intentionally designed by Defendants to duplicate or closely replicate the Terrible Marks contained on and/or associated with the goods sold by Eamon and/or the authorized licensees/sub-licensees of Eamon and/or the Steelers.

53. The continued use of the Terrible Marks in the sale of goods by Defendants is likely to cause mistake and confusion in the marketplace and in the minds of purchasers and lead them to believe that Defendants' goods bear authentic Terrible Marks.

54. The use by Defendants of the Terrible Marks in the sale of the Infringing Products constitutes unfair competition under the Lanham Act.

55. Defendants are deliberately attempting to trade upon the goodwill of Eamon and/or the Steelers by selling and advertising and/or intending to sell and advertise their goods as good bearing authentic Terrible Marks.

56. Eamon has been damaged and will continue to be damaged by Defendants' production, promotion, marketing and/or sale of the Infringing Products.

## COUNT III

## COMMON LAW UNFAIR COMPETITION

57. Eamon incorporates each of the foregoing Paragraphs as if each was set forth herein.

58. By advertising, marketing, distributing, and/or selling the Infringing Products, Defendants are unfairly competing with and damaging Eamon in violation of Pennsylvania common law.

## COUNT IV

## DILUTION UNDER
## SECTION 43(C) OF THE LANHAM ACT (15 U.S.C. § 1125(c))

59. Eamon incorporates each of the foregoing Paragraphs as if each was set forth herein.

60. The Terrible Marks have attained the status of famous marks as defined in the Lanham Act.

61. The Terrible Marks have acquired distinctiveness in that the general consuming public believes that goods manufactured, sold and distributed under the Terrible Marks emanate from a single source.

62. The Terrible Marks are being subjected to dilution as defined in 15 U.S.C. § 1125(c) through the action of Defendants in manufacturing, advertising, marketing, distributing, and/or selling the Infringing Products.

## COUNT V

## STATE LAW DILUTION

63. Eamon incorporates each of the foregoing Paragraphs as if each was set forth herein.

64. The Terrible Marks are being subjected to dilution as defined in 54 Pa. C.S.A. § 1124 through the actions of Defendants in manufacturing, advertising, marketing, distributing, and/or selling the Infringing Products.

## COUNT VI

## UNJUST ENRICHMENT/QUANTUM MERUIT

65. Eamon incorporates each of the foregoing Paragraphs as if each was set forth herein.

66. Defendants have intentionally misused the Terrible Marks to derive personal profit and otherwise have been enriched as a result of the benefits and goodwill which flow from the Terrible Marks.

67. It would be unjust for Defendants to retain the financial and other benefits that they have derived from their illegal use of the Terrible Marks.

68. Defendants should be required to pay to Eamon the value of the benefits gained through the unauthorized and illegal use of the Terrible Marks.

## COUNT VII

## DECLARATORY JUDGMENT

69. Eamon incorporates each of the foregoing Paragraphs as if each was set forth herein.

70. Real, live, and actual controversies within the Court's jurisdiction exist between Eamon and Defendants.

71. The Terrible Marks are valid and, as such, vest Eamon with complete and exclusive control over the Terrible Marks.

72. Nevertheless, Defendants have alleged that they are permitted to use the Terrible Marks by way of an agreement, written or otherwise, between Defendant Goldberg and Mr. Cope.

73. Defendants also question the validity and/or enforceability of the Terrible Marks.

74. As such, actual and justifiable controversies exist over whether: (1) an agreement exists between Mr. Cope and Goldberg and, if so, the terms of such an agreement; (2) the validity and enforceability of any such agreement; and/or (3) the validity and enforceability of the Terrible Marks.

75. The issuance of a declaratory judgment will resolve the parties' dispute over their rights with respect to the Terrible Marks.

**PRAYER FOR RELIEF**

WHEREFORE, Eamon demands that judgment be entered in its favor and against Defendants with respect to all counts of the Complaint as follows:

1. That Defendants, and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, be preliminarily and thereafter permanently enjoined from infringing on the Terrible Marks.

2. That Defendants be preliminarily and thereafter permanently enjoined from interfering in any way with the contractual and business relations of Eamon and/or its licensees, including the Steelers, with their customers or potential customers and/or their other distributors, dealers, or other commercial relationships.

3. That Defendants be preliminarily and thereafter permanently enjoined from effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the directives of the injunction.

4. That Defendants be preliminarily and thereafter permanently enjoined from manufacturing, marketing and/or selling products which infringe upon the Terrible Marks, including, but not limited to, the Infringing Products.

5. That Defendants be required to recall any and all advertisements, product catalogs, or marketing materials which infringe upon the Terrible Marks.

6. That Defendants be preliminarily and thereafter permanently enjoined from creating, manufacturing, disseminating and/or selling any new products which infringe upon the Terrible Marks.

7. That Defendants be required to remove any infringing materials or information accessible upon their website -- https://www.timeinapparel.com/ -- or any other website maintained by Defendants or any third party owned and/or otherwise controlled by Defendants.

8. That, upon the entry of a permanent injunction, Defendants be required to contact each customer which has received an Infringing Product from Defendants informing such customers that they are not employees or representatives of Eamon and/or the Steelers, are not authorized to deal in products which utilize the Terrible Marks, and that the Infringing Products are not authorized by Eamon and/or the Steelers. Defendants should also be required to copy counsel for Eamon on each and every correspondence to this effect.

9. That Defendants be required to make a verified report to the Court setting forth all actions taken by the Defendants to comply with the injunction and the dates such actions were taken.

10. That, upon the entry of a permanent injunction, Defendants be required to provide an accounting of all sales, revenues and fees received by them for all products distributed, marketed or sold by them (and the receipts, gross profits and expenses relating thereto) using the Terrible Marks from the date of first use by Defendants until disassociation is complete.

11. That Eamon be awarded damages in the amount of Defendants' profits, gains or advantages of any kind resulting from Defendants' unfair competition.

12. That all damages under the Lanham Act be trebled.

13. That Defendants be directed to pay all of Eamon's costs connected with this action, including reasonable attorneys' fees, filing fees and other costs as authorized by the Lanham Act.

14. The Court declare that no valid and enforceable agreement (whether written or oral) exists now, or ever existed, between Goldberg and Mr. Cope with respect to the Terrible Marks.

15. That the Terrible Marks are valid and enforceable.

16. That Defendants have no right whatsoever to utilize the Terrible Marks in any form or fashion.

17. That Eamon be afforded such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: August 21, 2020  **BUCHANAN INGERSOLL & ROONEY PC**

By: /s/ Brian H. Simmons
    Brian H. Simmons (PA Bar No. 84187)
    Bryan H. Opalko (PA Bar No. 86721)
    Eric M. Spada (PA Bar No. 311446)
    Union Trust Building
    501 Grant Street, Suite 200
    Pittsburgh, PA 15219
    412-562-8800 (phone)
    412-562-1041 (fax)
    brian.simmons@bipc.com
    bryan.opalko@bipc.com
    eric.spada@bipc.com

    Attorneys for Plaintiff The Eamon Foundation

**JURY TRIAL DEMANDED**